IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID JOHNSON, | : | CIVIL ACTION NO. **3:CV-09-0952** |
| | : | |
| | : | Magistrate Judge Blewitt |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY DUFFY, | : | |
| | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**I. Background.**

Plaintiff, David Johnson, a resident of Chagrin Falls, Ohio, filed a Complaint on May 20, 2009, in this Court against Defendant Timothy Duffy, a resident of Stroudsburg, Pennsylvania. (Doc. 1). Plaintiff basically alleges that on May 28, 2007, he was stopped in traffic in the eastbound lane of Interstate 80, in Strouds Township, Monroe County, Pennsylvania, when a vehicle driven by Defendant forcefully rear-ended his vehicle. Plaintiff alleges that as a result of the collision Defendant caused with his vehicle, he suffered serious injuries and serious impairment of his bodily functions, including head injury, multiple traumatic injuries to his back and neck, contusions, as well as emotional distress and anxiety. Plaintiff avers that he was required to seek medical attention, therapies, and to take medications. In his single-count Complaint, Plaintiff asserts a negligence claim against Defendant.

Plaintiff also alleges that at the time of the accident he was an enlisted member of the U.S. Navy, and that after the accident, he was placed on limited duty due to his limitations from

the accident and rendered unfit for deployment for combat duty, sea duty or individual augmentation. Further, Plaintiff avers that he will be required to receive future medical care due to the accident, and that he has suffered loss of earning capacity and the prospect of a life-long career with Navy.

As relief, Plaintiff seeks compensatory damages against Defendant.

On July 28, 2009, Defendant filed his Answer to Plaintiff's Complaint. (Doc. 6). Discovery was then conducted.

On August 3, 2011, the parties consented to proceed before the undersigned for all maters, including trial, pursuant to 28 U.S.C. §636(c). (Doc. 47).

The trial in this case is set for April 9, 2012. On January 18, 2012, Defendant filed a Motion *in Limine* to preclude the report and testimony of Plaintiff's medical expert witness, V.D. Dhaduk, M.D. **(Doc. 51).** Defendant attached his brief to his Motion. Defendant's Motion has been briefed and exhibits have been submitted. (Docs. 51 and 52).

The parties indicate that since they conducted the depositions of Defendant's medical expert Robert W. Mauthe, M.D. and Plaintiff's expert Dr. Dhaduk, on July 27, 2011 and November 8, 2011, respectively, there is no need for the Court to conduct a *Daubert* Hearing. (Doc. 51, p. 3).[1] The Court agrees with the parties that there is no need for a *Daubert* Hearing in this case, especially since Defendant has submitted the transcripts from the depositions of Defendant's medical expert, Dr. Mauthe, and Plaintiff's expert, Dr. Dhaduk, along with the

---

[1] *See Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993).

deposition exhibits, including the Curriculum Vitae of Dr. Dhaduk, the Curriculum Vitae of Dr. Mauthe and the reports of both experts.[2] (Doc. 51, Exs. A and B).  See *Feit v. Great West Life and Annuity Ins. Co.*, 271 Fed. Appx. 246, 250, 253-54 (3d Cir. 2008)("it is within the discretion of the District Court to determine whether a *[Daubert]* hearing is necessary.")(citation omitted); *Gagnon v. Lemoyne Sleeper Co., Inc.*, 2009 WL 1324141, *1 (M.D. Pa. 5-12-09). Jurisdiction of this Court is based on diversity pursuant to 28 U.S.C. § 1332(a), as Plaintiff Johnson resides in Ohio, and Defendant Duffy is a Pennsylvania resident.  See *Feit v. Great West Life and Annuity Ins. Co.*, 271 Fed. Appx. 246, 251 (3d Cir. 2008).

Defendant's Motion in *Limine* to Preclude the testimony and report of Plaintiff's expert witness, Dr. Dhaduk, is ripe for disposition.  **(Doc. 51).**

## II. Discussion.

Defendant filed a Motion in *Limine* to Preclude the testimony of Plaintiff's expert medical witness, Dr. Dhaduk, essentially arguing that there is no accepted scientific causal link between fibromyalgia and trauma.  Defendant's Motion has been thoroughly briefed by the parties.  Defendant files his Motion in *Limine* under *Daubert* and Fed.R.Evid. 702 and, he argues that Dr. Dhaduk is not qualified to proffer an expert opinion that Plaintiff has fibromyalgia with myofascial pain syndrome which was directly and causally caused by the May 28, 2007 accident.  Defendant indicates that Dr. Dhaduk concluded in his expert report that Plaintiff's

---

[2]Dr. Mauthe prepared three reports, including a January 28, 2011 Independent Medical Examination Report ("IME").  They are attached to Defendant's Doc. 51 Motion as part of Ex. B.

fibromyalgia with myofascial pain syndrome was directly related to the May 28, 2007 accident, and that his diagnosis of a causal relationship was given with a reasonable degree of medical certainty. Defendant states that Plaintiff was not a patient of Dr. Dhaduk and that Plaintiff was merely examined by Dr. Dhaduk for this lawsuit on February 17, 2011.

Further, Defendant states as follows:

15. Dr. Dhaduk did not directly address the question as to whether there was a consensus in the medical community, including his subspecialty of neurology as to whether a car accident can *cause* fibromyalgia, but rather responded with an answer regarding "trigger factors" for symptoms, which he Case 3:09-cv-00952-TMB Document 51 Filed 01/18/12 Page 5 of 48 conceded, according to the literature and current state of medical science could be numerous. (Dhaduk dep.,1 p5.: 6-19).

16. In response to the question as to whether trauma could be one of the triggers, but that there had never been a definitive link, Dr. Dhaduk simply stated "Many trigger factors." (Dhaduk dep., 15:20-23).

17. Dr. Dhaduk conceded that he was not aware of any evidence-based medical research or clinical studies that directly link any type of trauma to fibromyalgia. (Dhaduk dep., pp1.5 : 24, 25, 16: 1-3).

18. Dr. Dhaduk was unaware of the publication entitled "the Fibromyalgia Syndrome Consensus Report on Fibromyalgia and Disability from 1997" or Dr. Frederick Wolf other than as an individual who had published literature. (Dhaduk dep., p. 16: 4-17).

(Doc. 51, pp. 4-5, ¶'s 15-18).

Defendant largely relies upon his expert, Dr. Mauthe, to support his contention that there is no scientific evidence to show that post-traumatic fibromyalgia exists and that there is no science to show a casual link between trauma and whole body pain. In particular, Defendant states as follows:

4

23.    Dr. Mauthe testified that his report of September 2, 2010 provided that research in the area reveals no evidence suggesting that post-traumatic fibromyalgia exists, there has been no science to demonstrate a causal relationship between trauma and whole body pain, there are no objective findings, and that the fibromyalgia diagnosis is based solely on Mr. Johnson's report. (Mauthe dep., pp. 16:5-24, 17:1-17).

24.    Dr. Mauthe disagreed with Dr. Dhaduk's diagnosis that Mr. Johnson's fibromyalgia was caused by the accident:

> From a medical point of view there's been no identifiable known cause of fibromyalgia. It's simply based on patient report. There's no science in my knowledge that establishes a causal relationship between trauma and fibromyalgia. Merely to establish that relationship and provide that opinion based on a temporal association in my opinion is insufficient and therefore I would disagree.

(Mauthe dep., pp. 22:4:-25, 23:1-4)

25. Dr. Mauthe testified that there was *no peer-reviewed medical literature* to his knowledge that would support the theory that fibromyalgia is caused by trauma such as that sustained in a rear-end car accident, and there is *no consensus within the medical community* including neurologists and rheumatologists that trauma is a causative factor in developing fibromyalgia, nor linking trauma and fibromyalgia. (Mauthe dep., pp. 17:18-25, 18:10-21, 19:1-6, 20: 11-17).

26.    Dr. Mauthe agreed that there is *no reliable methodology or testing* that has shown a definitive causal relationship between trauma and fibromyalgia for the following reason:

> There is no diagnostic test for fibromyalgia. It is merely a diagnosis based upon symptoms, subjective symptoms. In fact in order to make the diagnosis of fibromyalgia all the objective testing has to be normal. Because there's no physiologic mechanism to explain the syndrome, there has been no science to show what causes the syndrome. We don't know what causes it. So if you don't know what the pathophysiology is behind a condition, then you can't make the leap of a causative event. There's no way to link A with B.

(Mauthe dep., p. 19:4-19).

> 27. There are *no clinical studies* that have gained general acceptance within the medical community that would prove a causative link between trauma such as a car accident and fibromyalgia, of which Dr. Mauthe is aware. (Dr. Mauthe dep. p. 20:1-10).
>
> 28. Dr. Mauthe further testified that he has never seen any science which is able to identify anything more than a *temporal* relationship between trauma and fibromyalgia, but not a *causal* one and explained the difference between such theories of association versus the lack of general evidence and verifiable proof as to causation. (Mauthe dep., pp. . 11:1-3, 18:10-25, 28:19-25, 29:1-22).

(Doc. 51, pp. 6-8, ¶'s 23-28).

Defendant points out that Dr. Mauthe indicated that the 1997 "Consensus Report on Fibromyalgia and Disability," which was published in the Journal of Rheumatology, found that the data was not sufficient to determine the cause of fibromyalgia and, that no peer-reviewed publication has disagreed with or rejected this finding that there is no known cause of fibromyalgia. (*Id.*, p. 9). Defendant (Doc. 51, pp. 11-12) concedes that it does not appear there are any Pennsylvania federal court cases which addressed the issue of whether expert testimony linking fibromyalgia and trauma should be precluded under *Daubert*, but he indicates that such expert testimony was precluded in two state court cases, namely, *Riccio v. S&T Contractors*, 56 Pa. D&C 4th 86 (C.C.P. Chester 2001), and *Karr v. Paoli Memorial Hospital*, Civil No. 97-0023, Court of Common Pleas of Chester County. (*See* Doc. 51, Exs. C and D).

Thus, in his Motion *in Limine*, Defendant seeks to preclude the neurologist medical expert report and testimony at trial of Dr. Dhaduk, under *Daubert* and Rule 702, and Dr. Dhaduk's opinion that Plaintiff's fibromyalgia and myofascial pain syndrome was caused by motor vehicle accident since no scientific evidence exists and no peer-reviewed publications exist to show that

trauma can cause fibromyalgia. Defendant concludes that there is no general consensus in the relevant scientific community that fibromyalgia syndrome is causally related to trauma.

In opposition to Defendant's Motion, Plaintiff argues as follows:

> It is undisputed that Dr. Dhaduk is a practicing physician with a private practice in neurology for the past twenty-five years. Over the years, Dr. Dhaduk has treated numerous patients with fibromyalgia, and continues to treat fibromyalgia patients in his private practice, on average two patients per week. Furthermore, Dr. Dhaduk teaches residents from Temple University's resident program about fibromyalgia, its diagnosis and treatment. The fact that Dr. Dhaduk and Dr. Mauthe disagree about the causes of fibromyalgia has no bearing on Dr. Dhaduk's qualifications. Dr. Dhaduk clearly possesses the requisite specialized knowledge, skill, experience, training and education to qualify as an expert under Rule 702. The opinion and testimony of Dr. Dhaduk should not be precluded.

(Doc. 52, p. 4).

Moreover, Plaintiff argues:

> Dr. Dhaduk has spent years treating and diagnosing patients with fibromyalgia. He has spent years teaching other physicians about fibromyalgia. Dr. Dhaduk examined Plaintiff, reviewed Plaintiff's medical records, and studied the conclusions of Plaintiff's Navy doctors as the basis for his observations and opinion. His methodology is in line with the standards for reliability enunciated by this Court. Where, as here, there are other factors that demonstrate the reliability of the expert's methodology, an expert opinion should not be excluded simply because there is no literature on point.

(Doc. 52, p. 7).

Plaintiff concludes as follows:

> The testimony of Dr. Dhaduk fits this case because it is relevant and will assist the trier of fact. His analysis will help the jury understand what happened, and how the injuries Plaintiff sustained are consistent with the impact of the automobile accident. The fact that Dr. Mauthe and Dr. Dhaduk disagree as to the cause of fibromyalgia should not preclude the opinion and testimony of Dr. Dhaduk. The experts in the present case clearly disagree

> that the trauma suffered by Plaintiff as a result of the accident could cause the debilitating consequences that Plaintiff suffers. Dr. Mauthe uses the logic that because there is no evidence to say that trauma causes fibromyalgia, it does not. Whereas, Dr. Dhaduk concludes that there is no evidence to say that trauma does not cause fibromyalgia. The analysis of these differing conclusions is a matter for the trier of fact. The experts will undergo cross-examination that will allow the jury to assess the validity of the respective conclusions of the experts.

(Doc. 52, p. 8).

Defendant relies upon Federal Rule of Evidence 702 to support his present Motion. Federal Rule of Evidence 702[3] provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, Training, or education may testify in the form of an opinion or otherwise, if:
> (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods reliably to the facts of the case.

Defendant points out that Dr. Dhaduk admitted that he did not know of any evidence-based medical research or clinical studies that directly linked any type of trauma to fibromyalgia. Specifically, Dr. Dhaduk testified as follows:

> Q.   Doctor, are you aware of any peer review -- right now sticking with peer reviewed medical literature -- that has been accepted within the relevant medical community, in this case, neurology, which supports the theory that fibromyalgia is caused by trauma such as a car accident?

---

[3] Rule 702 was amended on December 1, 2011.

A. There is no any definite cause of fibromyalgia and there is so much of a controversy regarding the literature, depends upon who reads it, where they read it, what they read.

Q. So based upon your understanding of the current state of medical literature, medical science, there is no known cause for fibromyalgia. Is that correct?

A. Correct.

Q. Similar question. Is there any consensus within the medical community, including your subspecialty of neurology, that a car accident can cause fibromyalgia?

A. There's always a trigger factor that can bring out the symptoms of the connective tissue disorder, including the fibromyalgia. Is it a fall, is it a trauma or accident, whatever. But there's always a trigger factor that brings out the symptoms.

Q. And according to the literature, as you understand it, and the current state of medical science, that trigger can be numerous things, correct?

A. Correct.

Q. And trauma can be one of them, but there's never been a definitive link, am I correct, between trauma and the development of fibromyalgia?

A. Many trigger factors.

Q. Doctor, are you aware of any evidence-based medical research or clinical studies that directly link any type of trauma to fibromyalgia?

A. No.

(Doc. 51, Ex. A, pp. 14-16).

Dr. Dhaduk also stated that he was not directly aware of the "Consensus Report on Fibromyalgia and Disability." (*Id.*, p. 16). Dr. Mauthe testified that no peer-reviewed publication has disagreed with or controverted the finding of the "Consensus Report on Fibromyalgia and Disability" that there is no known cause of fibromyalgia and that the cause of fibromyalgia is still not known. (Doc. 51, Ex. B, pp. 26-28).

As the Third Circuit stated in *Walker v. Gordon*, 2002 WL 31059157 **2 (3d Cir. 2002), "[t]he District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*. See *Kumho Tire [v. Carmichael]*, 526 U.S. [137] at 152-53 [(1999)]." The *Walker* Court also stated that "*Daubert* requires that, when faced with a proffer of expert testimony, a trial judge determines 'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.' *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. These gatekeeping requirements have been extended to apply to all expert testimony. See *Kumho Tire*, 526 U.S. at 147." *Id.*

Further, the *Walker* Court stated:

> In accordance with *Daubert*, trial courts are required to apply a reliability analysis to an expert's opinion; that opinion is "reliable" if it is based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (1994) (quoting *Daubert*, 509 U.S. at 590). In other words, the expert must have "good grounds" for his belief. *Id.* at 741-42 (explaining how Rule 702, which governs the use of expert testimony in the federal courts, embodies three distinct substantive restraints on the admission of expert testimony: qualifications, reliability and fit).

*Id.* at **3.

The Court in *Walker* provided guidance on the role of the trial court with respect to its gatekeeping requirements. The *Walker* Court explained:

> In performing its gatekeeping function and, in particular, in deciding whether an expert's report meets the reliability factor of a *Daubert* and Rule 702 analysis, the District Court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein. To the contrary, the role

>of the District Court is simply to evaluate whether the *methodology* utilized by the expert is reliable, i.e., whether, when correctly employed, that methodology leads to testimony helpful to the trier of fact. *See Daubert*, 509 U.S. at 591-93 (noting that the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue" and that the trial court's determination "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue"). [FN7] Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury. *Cf. Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

*Id.*

The Court agrees with Plaintiff that Dr. Dhaduk is qualified to offer an opinion with respect to Plaintiff's medical conditions, and that he is qualified to opine with respect to whether the accident at issue caused Plaintiff's alleged fibromyalgia with myofascial pain syndrome. Specifically, Dr. Dhaduk testified that he examined Plaintiff on February 17, 2011, and reviewed Plaintiff's medical records, as well as Dr. Mauthe's IME, and that he diagnosed Plaintiff with having chronic severe pain syndrome, fibromyalgia with myofascial pain syndrome, minimal sleep apnea and generalized anxiety disorder. (Doc. 51, Ex. A, pp. 7-10). Dr. Dhaduk opined in his expert report that Plaintiff's fibromyalgia with myofascial pain syndrome, which he diagnosed Plaintiff as having, was "directly related to the motor vehicle accident of May 28, 2007." (*Id.*, pp. 10-11). Dr. Dhaduk was not one of Plaintiff's treating physicians and he only saw Plaintiff on February 17, 2011, for the purpose of preparing an expert report for Plaintiff's instant lawsuit. Plaintiff basically argues that Dr. Dhaduk's testimony is sufficiently reliable and that it will help the jury better

11

understand how his alleged injuries could be caused by the trauma from the rear end collision Defendant's vehicle had with his vehicle on the day in question.

The Court stated in *Martin v. Yellow Trans., Inc.*, 2006 WL 494880, *2 (E.D. Pa. 2006):

> Expert testimony that meets the qualification and reliability requirements is admissible "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" Fed.R.Evid. 702. In other words, a witness' testimony meets the "fit" prerequisite if his opinions present relevant evidence that helps the factfinder. *See Oddi*, 234 F.3d at 145 (*citing Daubert*, 509 U.S. at 591-92; *Paoli II*, 35 F.3d at 743).

Based on the filings of the parties, the Court finds that Dr. Dhaduk's proffered testimony and report satisfy the above stated "fit" requirement. The Court also finds that based on Dr. Dhaduk's undisputed 25 years experience in neurology and treating numerous patients with fibromyalgia (*i.e.* a couple of patients per week with fibromyalgia), and his teaching of residents from Temple University's resident program about fibromyalgia and its diagnosis and treatment, he is qualified regarding his proffered testimony and report about the cause of Plaintiff's alleged fibromyalgia with myofascial pain syndrome. Morever, the Court agrees with Plaintiff and finds that Dr. Dhaduk's report and testimony will assist the jury in understanding the evidence to be presented at trial and in determining facts that will be in issue at trial. Defendant can certainly present contrary evidence and the testimony of Dr. Mauthe, and he can cross-exam Dr. Dhaduk about his opinion, and the jury will be able to decide which expert is more credible and whether the accident could have caused Plaintiff's alleged fibromyalgia with myofascial pain syndrome. While Defendant's expert witness will provide the jury with information that there are no scientific studies or peer-reviewed publications which directly link fibromyalgia with being cause by trauma, Dr. Dhaduk should be

allowed to testify that there is no evidence to say that trauma does not cause fibromyalgia with myofascial pain syndrome.

In *Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F.Supp. 2d 261, 269, n. 6 (W.D. Pa. 2008), the Court noted:

> Fibrositis is an alternative name for fibromyalgia, a common condition characterized by long-term, body-wide pain and tender points in joints, muscles, tendons, and other soft tissues; it has been linked to fatigue, morning stiffness, sleep problems, headaches, numbness in hands and feet, depression, and anxiety. Fibromyalgia can develop on its own or along with other musculoskeletal conditions such as rheumatoid arthritis or lupus. The disorder has an increased frequency among women 20 to 50 years old. [Ms. Lamanna was 37 years old in 1992.]
>
> **The cause of the disorder [fibromyalgia] is unknown, but proposed etiologies include physical or emotional trauma**; abnormal pain transmission responses; sleep disturbances; changes in skeletal muscle metabolism, possibly caused by decreased blood flow; and infectious microbes such as viruses (although at this time, no such virus or microbe has been identified.) The overwhelming characteristic of fibromyalgia is long-standing pain associated with 18 defined "tender points," which are distinct from "trigger points" seen in other pain syndromes. The soft-tissue pain of fibromyalgia is described as deep-aching, radiating, gnawing, shooting or burning, and ranges from mild to severe. Fibromyalgia sufferers tend to wake up with body aches and stiffness. For some patients, pain improves during the day and increases again during the evening, although many patients with fibromyalgia have day-long, unrelenting pain. Pain can increase with activity, cold or damp weather, anxiety, and stress.
>
> Specific symptoms include tender points on the back of the neck, shoulders, chest, ribcage, lower back, buttocks, thighs, knees, and elbows; fatigue; sleep disturbances; body aches; reduced exercise tolerance; and chronic facial muscle pain or aching. Diagnosis of fibromyalgia requires a history of at least three months of widespread pain, as well as pain and tenderness in at least 11 of the 18 tender-point sites. Laboratory and x-ray tests may be done to confirm the diagnosis, primarily by ruling other conditions with similar symptoms. In mild cases, symptoms may go away when stress is decreased or lifestyle changes are implemented. Treatment may include medications to decrease depression, relax muscles, improve sleep quality and reduce inflammation; physical therapy; psychological and life-style counseling; diet modification; stretching

exercises and massage; and, in severe cases, pain management programs. *See* medical encyclopedia entry at MedlinePlus.

(Emphasis added).

Also, as the Court in *Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F.Supp. 2d at 299, pointed out with respect to Social Security disability and ERISA cases, fibromyalgia is a "condition[] for which objective clinical tests such as blood or other laboratory tests, x-rays, and MRI's, do not exist."(citations omitted). The Court in *Lamanna* further stated that "[e]ven the most reliable of the quasi-objective tests for fibromyalgia, *i.e.* pain with pressure on 11 of the 18 identified tender points, may or not prove or disprove the diagnosis." *Id.*(citations omitted). Additionally, "the doctor conducting the examination must rely, at least in part, on the patient's subjective statements about the extent of pain he is experiencing." *Id.*(citations omitted). Finally, the *Lamanna* Court stated that "[t]he Third Circuit Court of Appeals has found it arbitrary and capricious to require clinical evidence of diseases such as fibromyalgia and CFS for which such evidence cannot be produced." *Id.* at 299-300(citation omitted).

Thus, the Court finds that the jury will be assisted by Dr. Dhaduk's testimony and report with respect to its ability to understand the evidence, decide factual issues, and determine the liability of the parties. The Court agrees with Plaintiff that, based on Dr. Dhaduk's many years of experience, he has specialized knowledge of fibromyalgia, that will assist the jury in determining the issues with respect to Plaintiff's alleged injuries and whether they were caused by the accident.

The Court also agrees with Plaintiff that Dr. Dhaduk, based on his undisputed background and experience, has the qualifications to testify about the possible cause of the conditions which he diagnosed Plaintiff as having. The exhibits submitted by Defendant have sufficiently set forth

Dr. Dhaduk's experience and resume, as well as his qualifications.[4] In his Brief (Doc. 52), Plaintiff has thoroughly stated Dr. Dhaduk's qualifications, and we will not fully repeat them. Suffice to say, that based on Dr. Dhaduk's qualifications and CV, the Court finds that he has sufficient employment, experience, and training in treating patients with fibromyalgia, and the Court finds that his testimony will certainly assist the jury regarding the issues of Plaintiff's medical conditions and the causes of them.

Further, as the Court in *Walker* stated, "[a]n expert is ... permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also ... a proper subject for cross-examination. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F. 3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."). 2002 WL 31059157 at **3.

Therefore, in liberally considering Dr. Dhaduk's qualifications as the *Martin* Court indicated was required, the Court finds that Dr. Dhaduk is qualified to testify and give expert opinions with respect to Plaintiff's medical conditions and the causes of them. *See also Houston v. Smith*, 2010 WL 4628442, *2(W.D. Pa. 11-5-10). Dr. Dhaduk's lengthy background and vast experience demonstrate his qualifications regarding the stated issues. The Court also agree with the Plaintiff that Dr. Dhaduk's testimony is relevant in this case.

---

[4]As mentioned, Dr. Dhaduk's CV and Report is attached to Defendant's Motion, Doc. 51, Ex. A. Dr. Dhaduk's deposition is also attached to Defendant's Motion, Doc. 51, Ex. A.

## III. Conclusion.

Accordingly, the Court shall deny Defendant's Motion in *Limine* (**Doc. 51**). An appropriate Order follows.[5]

*(signature)*

THOMAS M. BLEWITT
**United States Magistrate Judge**

Dated: February 1, 2012

---

[5] The Court distinguishes its findings in this case from the decisions in *Riccio v. S&T Contractors*, 56 Pa. D&C 4th 86 (C.C.P. Chester 2001), and *Karr v. Paoli Memorial Hospital*, Civil No. 97-0023, Court of Common Pleas of Chester County, in which the State Courts granted their Defendants' Motions *in Limine* based on their findings that the causal link relationship between trauma and fibromyalgia has not gained acceptance among the scientific community as a general proposition, since this Court finds that Dr. Dhaduk supplies a causal indicia in our Plaintiff's particular case and circumstances that the accident in question directly caused our Plaintiff's fibromyalgia condition, and that Dr. Dhaduk's opinion that Plaintiff's fibromyalgia was causally related to the accident was given with a reasonable degree of medical certainty. (Doc. 51, Ex. A, pp. 10-11).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID JOHNSON, : CIVIL ACTION NO. **3:CV-09-0952**
:
: Magistrate Judge Blewitt
Plaintiff :
:
v. :
:
TIMOTHY DUFFY, :
:
:
Defendant :

## ORDER

AND NOW, this 4th day of February, 2012, upon consideration of the Defendant's Motion in *Limine* to Preclude the Expert Testimony of Dr. Dhaduk **(Doc. 51)**, as well as the filings of the parties, and based on the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Defendant's Motion in *Limine* **(Doc. 51)** is **DENIED**.

**THOMAS M. BLEWITT**
United States Magistrate Judge

Dated: February 24, 2012